IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| SHEILLA E. LINARES | ) Case No. 5:14-cr-00025 (TBR) |
| | ) |
| | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Sheilla E. Linares' *pro se* Motion for Compassionate Release, (Mot. for Release), Dkt 41. The Government has responded, (Resp.), Dkt. 43. Linares has replied, (Reply), Dkt. 47. As such, this matter is ripe for adjudication.

For the reasons stated herein, Linares' Motion for Compassionate Release, Dkt. 41, is **DENIED**.

**I.   FACTUAL BACKGROUND**

This case presents tragic facts. On December 3, 2013, Sheilla Linares was babysitting two children—three-year-old A.C. and eleven-week-old T.R.C. Jr.—while also caring for her two young children. *See* Presentence Investigation Report dated February 17, 2016 (PSR), Dkt. 36, ¶ 12. Linares asserts that around 3:00 or 3:30pm she was supervising the children, trying to complete her homework, and putting clothes in the dryer. *Id.* ¶ 13. That's when T.R.C. Jr. began to scream and cry. *Id.* ¶ 13. Linares responded by, as she puts it, "rock[ing] the baby too hard," which caused serious injury to T.R.C. Jr. *Id.* Subsequently, T.R.C. Jr. became unresponsive, and Linares called the baby's mother and 9-1-1. *Id.*

The severity of T.R.C. Jr.'s injuries was readily apparent. Medical personnel noticed bruising on the infant's shoulders as well as his left upper arm. *Id.* ¶ 14. Medical tests and examinations revealed that T.R.C. Jr. had a bilateral subdural hemorrhage, focal subarachnoid hemorrhage, cerebral edema, bilateral optic nerve sheath hemorrhage, subdural blood throughout the spinal cord, and cervical nerve root hemorrhage, all of which were a result of Linares' actions. *Id.*

On December 7, 2013, T.R.C. Jr. was determined to have insufficient brain activity to sustain life and was pronounced dead. *Id.* ¶ 15. Medical findings and the autopsy report later determined that T.R.C. Jr.'s death was the result of the injuries inflicted by Linares. *Id.*

Linares pled guilty to manslaughter in the first degree, a class C felony, and on February 29, 2016, this Court sentenced Linares to 216 months in prison. *See* Judgment, Dkt. 39, at 1–3. Linares now seeks compassionate release, or, in the alternative, a reduction in her sentence. *See* Mot. for Release.

## II.    DISCUSSION

To obtain a sentence reduction from a district court, a defendant must exhaust her administrative remedies, as required by the First Step Act. *See United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Once a district court determines that the exhaustion requirement is satisfied, it must engage in a "three-step inquiry:" the court must "find" that "extraordinary and compelling reasons warrant [a sentence] reduction," ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and "consider[ ] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Jones*, 980 F.3d at 1101 (*citing* 18 U.S.C. § 3582(c)(1)(A)). "If each of those requirements are met, the district court 'may reduce

the term of imprisonment,' but need not do so." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (*quoting* 18 U.S.C. § 3582(c)(1)(A)).

### A. Exhaustion of Remedies

"The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3852, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences." *United States of America v. D-1 Duwane Hayes*, No. 16-20491, 2020 WL 7767946, at *1 (E.D. Mich. Dec. 30, 2020) (*citing Jones*, 980 F.3d at 1100). "Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105.

The parties dispute whether Linares has exhausted her administrative remedies. The Government argues that: (1) Linares has not produced a request with a staff signature and (2) "the Executive Assistant advised that Linares has not sought a reduction in sentence from the Warden." Resp. at 2. In response, Linares produced a document showing that she filed a request for compassionate release on February 10, 2021, and that the Warden denied her request on March 29, 2021—more than thirty days later. *See* Denial of Compassionate Release Request, Dkt. 47-1. This document was signed by the warden. *See id.*

After reviewing the Denial of Compassionate Release Request, the Court concludes that Linares did in fact exhaust her administrative remedies. As such, the Court proceeds with the following three-step inquiry.

### B. Extraordinary and Compelling Reasons

Because Linares has exhausted her administrative remedies, the Court now considers whether there are "extraordinary and compelling reasons" that justify a reduction of her sentence.

3

"[D]istrict courts have discretion to define 'extraordinary and compelling' on their own initiative." *Elias*, 984 F.3d at 519–20. But "the mere fact that defining *extraordinary and compelling* 'is left to the district court's discretion . . . does not mean that no legal standard governs that discretion.'" *United States v. Hunter*, No. 21-1275, 2021 WL 3855665, at *4 (6th Cir. Aug. 30, 2021) (emphasis in original) (*quoting Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005)). Those words still have their ordinary meaning. *Id.* When Congress enacted the statute in 1984, "'extraordinary' was understood to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *Id.* (*citing* Webster's Third New International Dictionary: Unabridged 807 (1971)). And "'[c]ompelling' meant 'forcing, impelling, driving.'" *Id.* (*citing* Webster's Third New International Dictionary at 463).

To argue that extraordinary and compelling reasons exist, Linares analogizes her case to Amy Hunter's case. *See United States v. Hunter*, No: 1:12-cr-62 (E.D. Va). Hunter pled guilty to second degree murder for the death of an infant entrusted to her care. *See id.*, Dkt. 97. For that, Hunter received a 102-month sentence. *See id.* Approximately eighty-six months into Hunter's sentence, a court released Hunter from custody. *See id.*, Dkt. 99. Linares argues that extraordinary and compelling reasons exist here because Hunter received time off of her sentence. *See* Mot. for Release at 8–10; *see also* Reply at 3–6.

Linares' argument quickly runs aground. Hunter was not released pursuant to a motion for compassionate release. *See Hunter*, No: 1:12-cr-62. Rather, it appears that Hunter was released because she was nearing the end of her sentence, a practice that is consistent with normal BOP procedures. *See id.*, Dkt. 99. This case is therefore easily distinguishable from what happened in *Hunter*, because the court in *Hunter* never actually concluded that

4

extraordinary and compelling reasons justified a reduction in Hunter's sentence. *See id.* What's more, the question of whether an inmate has demonstrated extraordinary and compelling reasons for release is a "highly individualized inquiry." *United States v. Catanzarite*, No. CR 18-0362 (ES), 2020 WL 2786927, at *5 (D.N.J. May 29, 2020). The fact that another district court released a similar defendant prior to the end of her sentence does not, on its own, give rise to an extraordinary and compelling reason for release. *See id.*

Linares makes no other argument as to why extraordinary and compelling reasons exist. Accordingly, the Court concludes that extraordinary and compelling reasons do not warrant a reduction to Linares' sentence.

### C. Sentencing Guideline Policy Statements

Having determined that there are not extraordinary and compelling reasons that warrant a reduction in sentence, the Court next considers whether its conclusion is "consistent with applicable policy statements." 18 U.S.C. § 3582(c)(1)(A).

The Court agrees with the United States District Court for the Eastern District of Kentucky in stating that "[w]hile the policy statement found in U.S.S.G. § 1B.13 of the Sentencing Guidelines is not binding," it still provides a "useful" point of reference. *United States v. Muncy*, No. 6: 07-090-DCR, 2020 WL 7774903, at *1 (E.D. Ky. Dec. 30, 2020). Congress provided no statutory definition of "extraordinary and compelling reasons" in § 3582(c)(1)(A). *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Instead, Congress directed the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Adkins*, No. 5:18-058-DCR, 2020 WL 7755629, at *1 (E.D. Ky. Dec. 29, 2020) (*quoting* 28 U.S.C. § 994(t)). Those descriptions

are found in § 1B1.13 of the United States Sentencing Guidelines (policy statement) and the application notes to that section.

This policy statement describes four categories of extraordinary and compelling reasons. The first three relate to an inmate's serious medical conditions, age, and status as a caregiver. U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). The last category is a catch-all provision titled "Other Reasons," which reads: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, cmt. n.1(D).

Linares' argument for reduction is based on the "other reasons" category. *See* Mot. for Reduction. However, simply citing a district court decision that does not even engage with the extraordinary and compelling analysis does not satisfy this standard, *see supra*. And although the Court commends Linares for her rehabilitation, *see infra* Part II.D, those circumstances alone do not merit her release. Application Note 3 reaffirms that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."

Thus, the Court finds that its conclusion is consistent with the Policy Statement.

### D. Sentencing Factors

Even if Linares was able to establish an "extraordinary and compelling reason," the relevant sentencing factors set forth in 18 U.S.C. § 3553(a) still weigh against relief. *See Elias*, 2021 WL 50169, at *1 (*citing Jones*, 980 F.3d at 1101); *see also Ruffin*, 978 F.3d at 1005 ("Even if [the first two requirements] are met, . . . a district court may still deny relief if it finds that the applicable § 3553(a) factors do not justify it") (internal quotation marks omitted).

Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  (3) the kinds of sentences available;

  (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];

  (5) any pertinent policy statement . . . by the Sentencing Commission;

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

  The "nature and circumstances" of Linares' "offense" do not favor early release. *See* 18 U.S.C. § 3553(a)(1). Linares pled guilty to manslaughter in the first degree. *See* PSR. Tragically, the victim was T.R.C. Jr., an eleven-week-old infant. *See id.* Further, T.R.C. Jr.'s family—his parents and sister, for example—are also victims of Linares' conduct. The nature and circumstances of Linares' offense are serious by any measure. On top of that, Linares has received four disciplinary reports spread out during her six years of incarceration. *See* Inmate Discipline Data, Dkt. 45, at 1–2. This does not indicate a level of rehabilitation that would support an early release.

7

The factors set forth in § 3553(a), to the extent that they are applicable, do not warrant the requested reduction of Linares' sentence. Therefore, the Court finds that consideration of the applicable § 3553(a) factors calls for denial of the motion to reduce.

That said, the Court does applaud Linares for participating in a variety of different programs and earning certificates in subjects ranging from music theory to Microsoft Excel to forklift safety. *See* Certificates, Dkt. 41-2.

### III. CONCLUSION

For the reasons stated herein, Linares' Motion for Compassionate Release, Dkt. 41, is **DENIED**.

**IT IS SO ORDERED**

*[Signature]*

**Thomas B. Russell, Senior Judge**
**United States District Court**

November 3, 2021

cc: Sheilla E. Linares
15815-033
DUBLIN
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
5701 8TH ST - CAMP PARKS
DUBLIN, CA 94568
PRO SE